IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TODD STURGILL                                                PLAINTIFF

    v.    Civil No. 05-5106

UNITED PARCEL SERVICE, INC.                                  DEFENDANT

## O R D E R

Now on this 2nd day of November, 2006, comes on to be considered **Defendant's Motion for Judgment as a Matter of Law, or, Alternatively, for New Trial, Remittitur, or Amendment of the Judgment, and to Stay Execution of the Injunction (Doc. 74)**. The Court, being well and sufficiently advised, finds and orders as follows with respect thereto:

1.  Plaintiff, Todd Sturgill ("Sturgill" or "plaintiff"), instituted this action against the defendant -- his former employer, United Parcel Service, Inc. ("UPS" or "defendant") -- under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Plaintiff alleged that defendant denied him a reasonable accommodation for his religious observation of the Sabbath and discriminated against him on the basis of his religion by terminating his employment.

2.  The case proceeded to trial before a jury on June 26, 2006. On June 30, 2006, the jury returned a verdict finding against plaintiff on his religious discrimination claim, but

finding in favor of plaintiff on his religious accommodation claim. The jury awarded plaintiff $103,722.25 in lost wages and benefits and $207,444.50 in punitive damages.

3. On September 11, 2006, the Court entered an order (Doc. 72) granting plaintiff's Motion For Reinstatement and Equitable Relief (Doc. 59). The Court entered a separate judgment (Doc. 73) contemporaneously therewith granting judgment to plaintiff on his religious accommodation claim as follows:

* awarding plaintiff $103,722.25 in lost wages and benefits and $207,444.50 in punitive damages;
* directing UPS to reinstate plaintiff, with all attendant seniority and benefits, to his prior bid route or to a position as an unassigned driver;
* directing UPS to pay plaintiff front-pay from the date of the verdict to the date of his reinstatement, at the rate of $259.96 for each workday; and
* enjoining UPS from failing to accommodate plaintiff's religious observation of the Sabbath in the future.

4. Defendant now moves for judgment as a matter of law (JAML), or in the alternative, for a new trial, remittitur, or amendment of the judgment. The Court will address each of the grounds for the motion in turn.

5.  **Sufficiency of the Evidence on Plaintiff's Accommodation Claim**

Defendant argues that it is entitled to a JAML or a new trial on plaintiff's accommodation claim, as the evidence showed that defendant could not accommodate plaintiff's Sabbath observance without violating the seniority system of the collective bargaining agreement, incurring undue hardship, or discriminating against other drivers.

A motion for JAML should only be granted if the nonmoving party "has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A party seeking to overturn a jury verdict based on the insufficiency of the evidence faces an onerous burden. *See Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 (8th Cir. 2000). A JAML is proper "'[o]nly when there is a complete absence of probative facts to support the conclusion reached' so that no reasonable juror could have found for the nonmoving party.'" *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir. 1997) (*quoting Lavender v. Kurn*, 327 U.S. 645, 653 (1946)). In evaluating a motion for JAML, the court must "assume as proven all facts that the nonmoving party's evidence tended to show, give [him] the benefit of all reasonable inferences, and assume that all conflicts in the evidence were resolved in [his] favor." *Id.*

A motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure should only be granted if the jury's verdict was against the great weight of the evidence so as to constitute a miscarriage of justice. *See Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1010 (8th Cir. 2000).

The jury was instructed that to return a verdict in favor of plaintiff on his accommodation claim, it had to find that defendant refused to grant plaintiff a reasonable accommodation and that the accommodation would not have imposed an undue hardship on defendant. The jury was further instructed:

> An accommodation is reasonable if it eliminates the conflict between Todd Sturgill's religious observation of the Sabbath and UPS's work requirements while reasonably allowing Sturgill to continue to be employed by UPS....
>
> Any accommodation that would result in more than a minimal cost to the operation of UPS's business is an undue hardship. Any accommodation that would result in more than a minimal loss to the efficiency of UPS's business is an undue hardship. Any accommodation that would result in more than a minimal increase in wages or overtime that must be paid to UPS's employees is an undue hardship.
>
> Any accommodation that would cause UPS to violate a bona fide collective bargaining agreement is an undue hardship. This includes any accommodation that would cause UPS to deprive another employee of seniority rights. Any accommodation which would require UPS to discriminate against other employees is an undue hardship. Undue hardship requires more than some fellow-worker's grumbling; it requires actual imposition on co-workers or disruption of the work routine....
> (Tr. 566-68.)

*See* 42 U.S.C. §§ 2000e(j); Trans World Airlines, Inc. V. Hardison, 432 U.S. 63 (1977); Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60 (1986); Seaworth v. Pearson, 203 F.3d 1056, 1057 (8th Cir. 2000).

Plaintiff presented evidence that defendant could have accommodated his request to end his shift by sundown on Fridays by "splitting" his delivery load, or, in other words, transferring some of his packages to other drivers. According to plaintiff, this was done on a daily basis to accommodate any driver that needed to be off by a certain time for his child's ball-games, PTA meetings, etc. Plaintiff testified that he would have only needed this accommodation during the holiday season -- after daylight savings time ended and deliveries peaked.

According to plaintiff, on the Friday he was terminated for returning to the UPS facility before sunset without completing the delivery of his packages, there were other drivers with less seniority and lighter loads who could have delivered his remaining packages. Plaintiff estimated that it would have only taken an hour or less for another driver to complete the deliveries.

Based on the above evidence, the Court believes the jury could have reasonably inferred and concluded that defendant could have provided a reasonable accommodation to plaintiff's religious observance of the Sabbath and that doing so would not have caused defendant any undue hardship. Accordingly, the Court rejects

defendant's challenge to the sufficiency of the evidence on plaintiff's religious accommodation claim.

6. **Backpay and Reinstatement**

Defendant alternatively argues that plaintiff is not entitled to backpay or reinstatement because, in finding against plaintiff on his religious-discrimination claim, the jury found that plaintiff's religion was not a motivating factor in his termination. The Court thoroughly addressed this issue in its order granting plaintiff's motion for reinstatement and equitable relief.

As stated in the prior order, the evidence at trial indicated that defendant terminated plaintiff for "job abandonment" because, before sunset on a Friday, plaintiff returned to the UPS facility without completing the delivery of his packages. There was no evidence indicating that plaintiff "abandoned" his job for any reason other than defendant's refusal to accommodate his religious beliefs.

The jury found against plaintiff on his religious discrimination claim but in his favor on his religious accommodation claim. Thus, while the jury found that plaintiff was terminated for job abandonment and not, per se, because of his religion, the only reason shown by the evidence for the "abandonment" was defendant's refusal to accommodate plaintiff's religious beliefs. The Court believes it can be reasonably

inferred from this evidence (and that the jury obviously did so reasonably infer) that, had defendant accommodated plaintiff's observance of the Sabbath, he would not have returned to the facility early without delivering all his packages (the "abandonment") and would not have been terminated for job abandonment. Thus, the Court rejects defendant's argument that plaintiff is not entitled to backpay or reinstatement.

7. **Punitive Damages**

Defendant argues that the evidence did not support an award of punitive damages. Punitive damages may be imposed if the employer acted with malice or reckless indifference to the employee's rights. *See Rowe v. Hussmann Corp.*, 381 F.3d 775, 783 (8th Cir. 2004). This standard does not require egregious misconduct, but there must be evidence that the employer intentionally discriminated and had "knowledge that it may be acting in violation of federal law." *Id.* at 783-84 (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999)).

There was evidence in this case that plaintiff submitted his first request for a religious accommodation in late July 2004. Plaintiff subsequently submitted two more requests and followed-up on them on a weekly basis but did not receive a response until late October 2004, when he was advised that defendant was "unable to provide the requested accommodation, given the substantial impact of [its] operation." (Tr. 71.) Plaintiff testified that

Scotty Patton, the manager of the Springdale facility where plaintiff worked, subsequently informed him that the real reason defendant could not accommodate him was "because if they accommodated [him], then everybody would request Friday off, and if everybody requested Friday off, then they couldn't do their business."  (Tr. 72.)

There was also evidence that defendant's human resources decision-makers denied plaintiff's request without ever discussing it with plaintiff.  The decision-makers likewise never spoke with the Springdale facility manager to obtain specific information regarding that facility, possible accommodations that could be made there, and how they would impact that facility.

From this evidence, the Court believes a jury could have reasonably concluded that defendant acted with malice or reckless indifference to plaintiff's rights.

8. **Remittitur**

Defendant argues that the total damage award of $311,166.75 ($103,722.25 in lost wages and benefits and $207,444.50 in punitive damages) should be reduced to $300,000.00, the statutory maximum permitted under Title VII.  The Court sees no merit to this argument, as plaintiff's lost wages are not to be included in computing the statutory cap.  *See* 42 U.S.C. § 1981a(b).  Thus, the damage award did not exceed Title VII's statutory maximum.

9. **Conclusion**

Based on the foregoing, **Defendant's Motion for Judgment as a Matter of Law, or, Alternatively, for New Trial, Remittitur, or Amendment of the Judgment, and to Stay Execution of the Injunction (Doc. 74)** should be, and hereby is, **DENIED** in all respects.

In his previously filed Motion for Attorney's Fees and Costs (Doc. 63), plaintiff's counsel indicated that he intended to supplement the motion to include a fee request for time expended on post-trial motions.  Plaintiff shall have until November 10, 2006, to submit a supplement to his motion for fees.  Defendant shall have until November 17, 2006, to file a response thereto.

**IT IS SO ORDERED.**

                                                         **/s/JIMM LARRY HENDREN**
                                                         **JIMM LARRY HENDREN**
                                                         **UNITED STATES DISTRICT JUDGE**